James M. McDonnell, Esq. (Bar ID #030572001)
Joshua D. Allen, Esq. (Bar ID #244552018)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
(908) 795-5200
ATTORNEYS FOR DEFENDANT

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MICHAEL MARN, individually and on behalf of all other similarly situated, | : : : | Civil Action No.: 3:20-cv-3912 (AET) (TJB) |
| Plaintiff, | : : | |
| v. | : : | **Return Date:** August 3, 2020 |
| ELS EDUCATIONAL SERVICES, INC., | : : | |
| Defendant. | : : | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

### ORAL ARGUMENT REQUESTED

Of counsel and on the brief:

    James M. McDonnell, Esq.
    Joshua D. Allen, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

PROCEDURAL HISTORY AND BACKGROUND.....................................................2

LEGAL ARGUMENT.................................................................................................5

STANDARD OF REVIEW .........................................................................................5

    A.    *Fernandez v. Zoni Language Ctrs., Inc.* And *Volpe v. Am. Language Commun. Ctr., Inc.* Require Dismissal Of Plaintiff's Complaint For Failure To State A Claim Upon Which Relief May Be Granted. ...........................6

        1.    Plaintiff concedes his primary duty included teaching. ..............................8

        2.    The complaint establishes that ELS employed Plaintiff as a teacher at an "educational establishment." .................................................13

            a.    Plaintiff held the title "Instructor.". ...............................14

            b.    Plaintiff possesses advanced degrees and certifications. ...............14

            c.    The formality of the courses. .......................................15

            d.    Whether the organization grants certificates or degrees. ...............15

            e.    The organization's charter. ..........................................16

            f.    The teacher's involvement in organizing, communicating, and delivering the curriculum. .......................................16

        3.    ELS possesses licensures and certifications held by educational establishments.......................................................17

    B.    This Court Should Decline To Exercise Supplemental Jurisdiction over the Remaining State Law Claims.......................................................19

CONCLUSION.............................................................................................21

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)..............................................................................................6

Bell Atlantic Corp. v. Twombly,
  550 U.S. 544 (2007)..............................................................................................5

Bretton v. Compass Career Mgmt., LLC,
  2015 U.S. Dist. LEXIS 8786 (E.D. La. Jan. 26, 2015)........................................9

Carnegie-Mellon Univ. v. Cahill,
  484 U.S. 343 (1988)............................................................................................20

Collins v. Cty. of Gloucester,
  2009 U.S. Dist. LEXIS 61137 (D.N.J. July 17, 2009).......................................20

Del Turco v. Randolph Twp. Police Dep't,
  2020 U.S. Dist. LEXIS 37538 (D.N.J. Mar. 2, 2020).........................................20

Escobedo v. Constr. Laborers' Educ., Training & Apprenticeship Fund of Minn.,
  2012 U.S. Dist. LEXIS 146109 (D. Minn. Oct. 11, 2012) ..........................9, 10, 14

Fernandez v. Zoni Language Ctrs., Inc.,
  2016 U.S. Dist. LEXIS 65310 (S.D.N.Y., May 18, 2016)..........................8, 14, 18

Fernandez v. Zoni Language Ctrs., Inc.,
  858 F. 3d 45 (2nd Cir. 2017)........................................................... *passim*

Ferrante v. Amgen, Inc.,
  2014 U.S. Dist. LEXIS 34975 (D.N.J. Mar. 18, 2014)........................................18

Fowler v. UPMC Shadyside,
  578 F.3d 203 (3d Cir. 2009)..................................................................................6

Franklin v. Breton Int'l, Inc.,
  2006 U.S. Dist. LEXIS 88893 (S.D.N.Y. Dec. 11, 2006) ....................................9

Freund v. Florio,
  795 F. Supp. 702 (D.N.J. 1992) ..........................................................................19

Hailey v. City of Camden,
  2014 U.S. Dist. LEXIS 137701 (D.N.J. Sep. 30, 2014) ......................................18

Jacobowitz v. M & T Mortg. Corp.,
   372 F. App'x 225 (3d Cir. 2010) ..........................................................19

Mortenson v. La Pine,
   2015 U.S. Dist. LEXIS 140987 (D. Or. Oct. 16, 2015)...........................9

Papasan v. Allain,
   478 U.S. 265 (1986)................................................................................5

Pedersen v. NCAA,
   2015 U.S. Dist. LEXIS 159067 (D.N.J. Nov. 24, 2015).........................20

Shaffer v. Albert Gallatin Area Sch. Dist.,
   730 F.2d 910 (3d Cir. 1984)...................................................................19

Tongring v. Bronx Cmty. Coll. of the City Univ. of N.Y. Sys.,
   2014 U.S. Dist. LEXIS 14099 (S.D.N.Y. Feb. 4, 2014)..........................9

Volpe v. Am. Language Commun. Ctr., Inc.,
   200 F. Supp. 3d 428 (S.D.N.Y. 2016)
   *aff'd* 692 Fed. Appx. 51 (2nd Cir. 2017) ................................7, 8, 14, 15

Volpe v. Am. Language Commun. Ctr., Inc.,
   692 Fed. Appx. 51 (2nd Cir. 2017)................................................ *passim*

Wilks v. District of Columbia,
   721 F. Supp. 1383 (D.D.C. 1989) ..........................................................10

## Rules

29 C.F.R. § 541.204 ...................................................................9, 13, 17

29 C.F.R. § 541.303 ............................................................... *passim*

Fed. R. Civ. P. 12(b)(6)...........................................................1, 5, 6, 18

Fed. R. Evid. 201 ...................................................................................18

**Statutes**

Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ............................................................... *passim*

29 U.S.C. § 213(a)(1) ............................................................................................................8, 9

**Non-TOA References**

Opinion Letter Fair Labor Stds. Act, FLSA2006-41 (Dep't of Labor Oct. 26, 2006) ......................................................................................................................17

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant ELS Educational Services, Inc. ("ELS" or "Defendant"), moves to dismiss the Complaint of Plaintiff Michael Marn ("Plaintiff"), with prejudice for failure to state a claim upon which relief may be granted.  In his three-count Complaint, Plaintiff alleges ELS failed to pay him and similarly situated employees overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  Plaintiff also brings related claims for breach of contract and unjust enrichment.  The gravamen of Plaintiff's claims is that ELS did not compensate its instructors, Plaintiff and the putative collective, for "out of class" work, such as: preparing class materials; grading homework, essays, quizzes, and tests; meeting with students before and after class; conducting and grading speaking evaluations; entering students' grades; and logging attendance.

As set forth herein, the Second Circuit, in Fernandez v. Zoni Language Ctrs., Inc., 858 F. 3d 45 (2nd Cir. 2017) and Volpe v. Am. Language Commun. Ctr., Inc., 692 Fed. Appx. 51 (2nd Cir. 2017), dismissed identical claims on the pleadings where the instructors taught English as a second language at private language centers.  The plaintiffs in Fernandez and Volpe – as in this matter – received an hourly rate for compensation; instructed students on English language in a classroom setting; prepared quizzes; corrected exams; and engaged in work outside the classrooms.  The courts, however, dismissed the claims on the pleadings because, even accepting the allegations as true, the complaints failed to state claims upon which relief could be granted because the plaintiffs qualified as exempt employees.

Much like Fernandez and Volpe, Plaintiff alleges ELS failed to pay overtime for hours worked in excess of forty (40) during unspecified workweeks.  Additionally – as in Fernandez and Volpe – Plaintiff asserts he prepared lessons, graded quizzes, and graded writing assignments; received compensation on an hourly basis; and did not receive overtime for hours worked in excess

of forty (40).  Plaintiff's Complaint, therefore, fails to state a claim for a violation of the FLSA as a matter of law because Plaintiff and the putative collective were and are properly exempt from overtime wages pursuant to the professional employee exemption, specifically the Teacher Exemption.

Lastly, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state common law claims for breach of contract and unjust enrichment.  For the reasons set forth herein, Defendant respectfully asks this Court to grant its motion, dismissing Plaintiff's FLSA claim as a matter of law and declining to exercise supplemental jurisdiction over Plaintiff's other claims.

## **PROCEDURAL HISTORY AND BACKGROUND**

On April 10, 2020, Plaintiff filed a three-count Complaint, which claims failure to pay overtime wages in violation of the FLSA (First Cause of Action); breach of contract (Second Cause of Action); and unjust enrichment (Third Cause of Action).  See D.E. No. 1, Cmpl.  Plaintiff's Complaint sets forth the following relevant allegations, in the following corresponding paragraphs, to support his claim that ELS failed to pay him and his putative collective overtime wages under the FLSA:

4.    ELS employed Plaintiff and the other similarly situated employees as Instructors during the relevant limitation period.

5.    Plaintiff and the Instructors were paid hourly, and only for those hours teaching students in the classroom ("In-Class"). But Plaintiff and the Instructors were required, and thus obligated by ELS, but were not paid for work performed for the ELS outside of the In-Class hours, such as preparing lessons, grading quizzes, and grading writing assignments (collectively "Out of Class", further defined below). Plaintiff and the Instructors estimate that they worked an "average" of 36 Out of Class hours per week.

[…]

9.    Plaintiff worked for ELS as an Instructor in St. Paul, Minnesota. Plaintiff instructed various international students ***on a curriculum designed by himself*** during his own time.

2

[…]

20.   ELS is a private entity that provides English language classes to international individuals who speak English as a second language. It operates through numerous language centers that are based on college campuses throughout the United States. ELS markets itself as providing language training to international students hoping to study in the United States, but further offers other programs to help other international individuals residing in the United States.

21.   To teach these students, ELS employs "dedicated" and "professional" Instructors. These instructors hold ***various high-level degrees*** and ***certifications*** to provide each student a "personalized approach" to learning English as a second language.

22.   At all relevant times Plaintiff and the Instructors perform(ed) teaching and educational services for ELS.

[…]

25.   ELS provide [sic.] broad skeletal structures for the course curriculum, but relied and required Plaintiff and the Instructors to create the daily lessons and activities and apply them […] to the students.

[…]

27.   Plaintiff worked the most rigorous curriculum, in which students attended 20-30 In-Class hours each week for 4 consecutive weeks. There were 13 sessions in a calendar year.

[…]

32.   In addition, Plaintiff and the Instructors worked additional Out of Class hours including: (a) preparing lessons plans, homework, quizzes, examinations, and other materials; (b) grading homework, quizzes, essays, examinations, and other materials; (c) meeting with students before and after class; (d) conducting and grading speaking evaluations; (e) logging students' grades and participation points; and (f) entering attendance (collectively "Out of Class" activities).

33.   For example, Plaintiff and the Instructors conducted the following Out of Class work:

      a.   *Creating, reviewing, and grading homework assignments.* Plaintiff and the Instructors conducted this type of work approximately 2-3 times per workweek, with the minimum time spent on this work

being 2 hours per work week, an average of 3 hours per work week, and a maximum of 4 hours per work week.

b. _Wiring and preparing quizzes, tests, and other written evaluations._ Plaintiff and the Instructors conducted this type of work 1-3 times per workweek, with the minimum time spent on this work being 2 hours per workweek, an average of 3 hours per workweek, and a maximum of 4 hours per workweek.

c. _Grading quizzes, tests, and other written evaluations._ Plaintiff and the Instructors conducted this type of work 1-3 times per workweek, with the minimum time spent on this work being 2 hours per workweek, an average of 3 hours per workweek, and a maximum of 4 hours per workweek.

d. _Reading and grading essays and other substantive papers._ Plaintiff and the Instructors conducted this type of work 2-4 times per workweek, with the minimum time spent on this work being 8 hours per workweek, an average of 10 hours per workweek, and a maximum of 12 hours per workweek.

e. _Providing preparation lessons to students._ Plaintiff and the Instructors conducted this type of work 8-12 times per workweek, with the minimum time spent on this work being 4 hours per workweek, an average of 6 hours per workweek, and a maximum of 8 hours per workweek.

f. _Meeting with students before or after class._ Plaintiff and the Instructors conducted this type of work 8-12 times per workweek, with the minimum time spent on this work being 2 hours per workweek, an average of 3 hours per workweek, and a maximum of 4 hours per workweek.

g. _Conducting and grading speaking evaluations._ Plaintiff and the Instructors conducted this type of work 1 times per workweek, with the minimum time spent on this work being 4 hours per workweek, an average of 5 hours per workweek, and a maximum of 6 hours per workweek.

h. _Logging students' grades and participation._ Plaintiff and the Instructors conducted this type of work 1 times per workweek, with the minimum time spent on this work being 1 hours per workweek, an average of 2 hours per workweek, and a maximum of 4 hours per workweek.

i. _Entering attendance._ Plaintiff and the Instructors conducted this type work 1 times per workweek, with the minimum time spent on this being 1 hours per workweek, an average of 1 hours per workweek, and a maximum of 1 hours per workweek.

34. All of the Out of Class activities were integral and indispensable to the performance of the Instructors' jobs, including the In-Class activities. Absent the Out of Class activities, the Instructors could not perform the In-Class activities. The Out of Class activities had to be performed for

Instructors to meet their obligations under the employment contracts, and therefore a requirement of their job. These Out of Class activities were not optional, and many were expressly mandated by ELS.

[…]

38.     ELS compensated Plaintiff and the Instructors on an hourly basis, but solely for the In-Class hours. ELS does not compensate Plaintiff or the Instructors for all of the Out of Class hours worked, which are integral to the Instructor's job.

39.     Plaintiff and the Instructors were not compensated at a rate of one and one-half (1.5) times their regular rate of pay for the overtime hours they worked as required by the FLSA, 29 U.S.C. § 207(a)(1).

Id. (emphasis added).

## **LEGAL ARGUMENT**

## **STANDARD OF REVIEW**

Plaintiff's Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) as the allegations fail to establish a viable FLSA claim against ELS. In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), the U.S. Supreme Court, setting the standard for dismissal under Fed. R. Civ. P. 12(b)(6), held a complaint must assert "enough facts to state a claim to relief that is plausible on its face," observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (internal quotation marks omitted). The Court is not required to accept as true "a legal conclusion couched as a factual allegation," conclusory allegations devoid of any reference to actual events, or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." Papasan v. Allain, 478 U.S. 265, 286 (1986).

Although construed in the light most favorable to the non-moving party, a complaint must contain enough facts to "allow[] the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Third Circuit

has set forth a two-prong test to be applied in deciding a motion to dismiss for failure to state a

claim:

> First, the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Here, Plaintiff has failed to plead a "plausible claim for relief." As discussed below, ELS

properly classified Plaintiff and his putative collective as exempt employees under the FLSA's

Teacher Exemption, not entitled to overtime wages under the FLSA. As a result, dismissal of

Plaintiff's Complaint is proper pursuant to Fed. R. Civ. P. 12(b)(6).

**A.** ***Fernandez v. Zoni Language Ctrs., Inc.* And *Volpe v. Am. Language Commun. Ctr.,
Inc.* Require Dismissal Of Plaintiff's Complaint For Failure To State A Claim Upon
Which Relief May Be Granted.**

The Second Circuit, in Fernandez v. Zoni Language Ctrs., Inc., 858 F. 3d 45 (2nd Cir. 2017)

and Volpe v. Am. Language Commun. Ctr., Inc., 692 Fed. Appx. 51 (2nd Cir. 2017), dismissed

complaints filed by instructors who taught English as a second language ("ESL") at private, for-

profit facilities. The courts, in those matters, described the duties of the plaintiffs in similar

fashions:

> Each of the named plaintiffs is or was employed as an English-language instructor
> at one of the two defendant Zoni Centers. As such, they not only teach English
> language classes held at Zoni Centers, but also devote time outside of class to
> creating lesson plans consistent with Zoni's curriculum standards, grading students'
> midterm and final examinations, and attending professional development meetings.
> Like teachers at primary and secondary schools, plaintiffs receive no extra
> compensation for these outside-the-classroom activities. But unlike primary and
> secondary school teachers, who generally receive a fixed salary for the totality of
> their work, plaintiffs are paid at an hourly rate – here, $16 to $17 per hour –
> calculated by reference only to their classroom teaching time. Plaintiffs allege that

their preparation and grading of student work represents a material part of their worktime and should be compensated in addition to classroom time.

Fernandez, 858 F. 3d at 47.

Plaintiff was employed as a teacher of English as a second language. Defendants paid Plaintiff $15 per hour for the time he spent teaching in class on weekdays and $17 on weekends. In addition to time spent teaching in class, Plaintiff spent about fifteen hours a week "preparing for his weekday classes, preparing quizzes, attending meetings, and correcting exams at home." Defendants did not pay Plaintiff for the hours he spent out of class. Plaintiff alleges that Defendants' failure to pay Plaintiff for his work outside the classroom lowered his rate of pay below the minimum wage. Plaintiff also alleges that he is entitled to overtime compensation for the hours he worked in excess of forty hours in a workweek.

Volpe v. Am. Language Commun. Ctr., Inc., 200 F. Supp. 3d 428 (S.D.N.Y. 2016), aff'd 692 Fed. Appx. 51 (2nd Cir. 2017).

Likewise, the courts described the educational establishments in similar fashions:

Defendants Zoni Centers are part of a chain of private, for-profit facilities offering English language instruction. Both Zoni Centers are licensed by the New York State Department of Education as English-as-a-Second-Language schools, as required by state law. They are also accredited by the Accrediting Council for Continuing Education and Training, one of ten institutions deemed "Nationally Recognized Accrediting Agencies" by the United States Department of Education.

Fernandez, supra (citations omitted).

ALCC is a New York City English language learning school, licensed by the New York State Education Department. Since 2013, ALCC has been accredited by the Commission on English Language Accreditation ("CEA"). The United States Department of Education has recognized the CEA as an approved national accrediting organization since 2003. ALCC provides students who complete courses with certificates; however, it does not confer educational degrees, professional licenses, or continuing educational credits on its students.

Volpe, supra at 429-30.

In both Fernandez and Volpe – as in this matter – the plaintiffs conceded a primary duty of

teaching. See, e.g., Fernandez 858 F. 3d at 47 ("plaintiffs conceded that they were 'teachers' under

the applicable regulation"); Volpe, 200 F. Supp. 3d at 431 ("Plaintiff concedes that he was

employed as a teacher and had the primary duty of teaching.").  The courts, thereafter, concluded

that the private organizations qualified as educational institutions by evaluating six (6) factors:

1. the title held by the organization's employees;
2. the certifications required of teachers;
3. the formality of the courses;
4. whether the organization grants certificates or degrees;
5. the organization's charter; and
6. the teacher's involvement in organizing, communicating, and delivering the curriculum.

See Fernandez v. Zoni Language Ctrs., Inc., 2016 U.S. Dist. LEXIS 65310, *23-24 (S.D.N.Y.,

May 18, 2016);[1] Volpe v. Am. Language Commun. Ctr., Inc., 200 F. Supp. 3d 428, 433 (S.D.N.Y.

2016).

Assuming the truth of Plaintiff's allegations for purposes of this motion, the Complaint

fails to state a claim upon which relief may be granted because Plaintiff qualifies for the

professional exemption as a teacher and Defendant meets the definition of an educational

establishment.  Specifically, Plaintiff alleges ELS engaged him as an English teacher at a language

center on a college campus.  Accordingly, Fernandez and Volpe require dismissal of Plaintiff's

Complaint with prejudice for failure to state a claim upon which relief may be granted.

**1.    Plaintiff Concedes His Primary Duty Included Teaching.**

29 U.S.C. § 213(a)(1) provides an exemption from the minimum wage provisions and

overtime pay requirements of the FLSA for employees employed in a bona fide "professional

capacity."  The Secretary of Labor, who is granted broad authority to define and delimit the scope

of FLSA exemptions, defines employed in a "professional capacity" to include teachers at

29 C.F.R. § 541.303.  The so-called "Teacher Exemption" provides, in relevant part:

> The term "employee employed in a bona fide professional capacity"
> . . . means any employee with a primary duty of teaching, tutoring,

---

[1] True and correct copies of all unpublished opinions are attached to the Certification of James M. McDonnell ("McDonnell Cert.") at Exhibit A to K.

> instructing or lecturing in the activity of imparting knowledge and
> who is employed and engaged in this activity as a teacher in an
> educational establishment by which the employee is employed.

29 C.F.R. § 541.303.  Put another way, the regulation establishes the following three-part test:

(1) the employee's primary duty is "teaching, tutoring, instructing or lecturing in the activity of

imparting knowledge"; (2) the employee is "employed and engaged . . . as a teacher"; and (3) the

employee works for "an educational establishment" as defined by 29 C.F.R. § 541.204(b). Id.  The

salary requirements for professional employees do not apply to teaching professionals.  29 C.F.R.

§ 541.303(d).  Thus, any employee who meets the three elements of the Teacher Exemption is, as

a matter of law, exempt from the overtime and minimum wage provisions of the FLSA.  See 29

U.S.C. § 213(a)(1); see also Fernandez, supra at 54 (applying the teacher exemption to instructors

at ESL facility "because the FLSA bona fide professional exemption applies[.]"); Volpe, supra at

52 (applying the teacher exemption to instructors at ESL facility because "the pleadings

themselves established that [the plaintiff] was a teacher […] with a primary duty of teaching in

order to impart[] knowledge, and therefore was a teacher at an educational establishment.")

(citations omitted); Mortenson v. La Pine, 2015 U.S. Dist. LEXIS 140987, at *14 (D. Or. Oct. 16,

2015) (finding a middle school teacher was not entitled to overtime pay for attending staff

meetings); Tongring v. Bronx Cmty. Coll. of the City Univ. of N.Y. Sys., 2014 U.S. Dist. LEXIS

14099, at *4 (S.D.N.Y. Feb. 4, 2014) (granting the defendant's motion to dismiss because the

plaintiff, a mathematics adjunct professor, was an exempt employee); Franklin v. Breton Int'l, Inc.,

2006 U.S. Dist. LEXIS 88893, at *12 (S.D.N.Y. Dec. 11, 2006) (concluding an auto mechanic

teacher at technical school was exempt employee); Bretton v. Compass Career Mgmt., LLC, 2015

U.S. Dist. LEXIS 8786, at *2-5 (E.D. La. Jan. 26, 2015) (finding a nursing teacher at a vocational

school was an exempt teacher); Escobedo v. Constr. Laborers' Educ., Training & Apprenticeship

Fund of Minn. & N.D., 2012 U.S. Dist. LEXIS 146109, at *6-10 (D. Minn. Oct. 11, 2012) (determining vocational teachers were exempt employees); Wilks v. District of Columbia, 721 F. Supp. 1383, 1386 (D.D.C. 1989) (concluding teachers for inmates in jail were exempt employees).

In Fernandez, the court held that an ESL instructor qualified for the professional exemption as a teacher based upon the allegations in the complaint. Id. Specifically, the court held:

> As described in plaintiffs' amended complaint, their primary purpose is to provide English-language instruction to students using prescribed books in a traditional classroom environment. Every lesson plan must include speaking, listening, writing, and reading English, with student progress assessed on midterm and final examinations. The allegations confirm that plaintiffs were engaged in the transmittal of knowledge to students in much the same way as primary and secondary school teachers, except that plaintiffs' students were adults, not children, and the knowledge conveyed to them focused on a single subject, the English language.

Fernandez, 858 F. 3d at 50.

Additionally, the possession of a teaching certificate "provides a clear means of identifying the individuals contemplated as being within the scope of the exemption for teaching professionals." 29 CFR 541.303(c). In Escobedo, the court held that the plaintiff qualified as an exempt teacher because he possessed a teaching certificate and admitted that he held the title of "instructor" with duties that included "teach[ing] both English and Spanish[.]" 2012 U.S. Dist. LEXIS 146109, at *6.

The allegations in Plaintiff's Complaint establish that Plaintiff and the putative collective are exempt professional employees under the Teacher Exemption. Specifically, the Complaint alleges in relevant part:

> 5.    Plaintiff and the Instructors were paid hourly, and only for those hours teaching students in the classroom ("In-Class"). But Plaintiff and the Instructors were required, and thus obligated by ELS, but were not paid for work performed for the ELS outside of the In-Class hours, such as preparing lessons, grading quizzes, and grading writing assignments (collectively "Out of Class", further defined below). Plaintiff and the Instructors estimate that they worked an "average" of 36 Out of Class hours per week.

[…]

9.    Plaintiff worked for ELS as an Instructor in St. Paul, Minnesota.  Plaintiff instructed various international students **on a curriculum designed by himself** during his own time.

[…]

21.   To teach these students, ELS employs "dedicated" and "professional" Instructors.   These instructors hold **various high-level degrees** and **certifications** to provide each student a "personalized approach to learning English as a second language.

22.   At all relevant times Plaintiff and the Instructors perform(ed) teaching and educational services for ELS.

[…]

25.   ELS provide [sic.] broad skeletal structures for the course curriculum, but relied and required Plaintiff and the Instructors to create the daily lessons and activities and apply them […] to the students.

[…]

32.   In addition, Plaintiff and the Instructors worked additional Out of Class hours including: (a) preparing lessons plans, homework, quizzes, examinations, and other materials; (b) grading homework, quizzes, essays, examinations, and other materials; (c) meeting with students before and after class; (d) conducting and grading speaking evaluations; (e) logging students' grades and participation points; and (f) entering attendance (collectively "Out of Class" activities).

33.   For example, Plaintiff and the Instructors conducted the following Out of Class work:

    a.    _Creating, reviewing, and grading homework assignments._  Plaintiff and the Instructors conducted this type of work approximately 2-3 times per workweek, with the minimum time spent on this work being 2 hours per work week, an average of 3 hours per work week, and a maximum of 4 hours per work week.

    b.    _Wiring and preparing quizzes, tests, and other written evaluations._ Plaintiff and the Instructors conducted this type of work 1-3 times per workweek, with the minimum time spent on this work being 2 hours per workweek, an average of 3 hours per workweek, and a maximum of 4 hours per workweek.

c. *Grading quizzes, tests, and other written evaluations.*  Plaintiff and the Instructors conducted this type of work 1-3 times per workweek, with the minimum time spent on this work being 2 hours per workweek, an average of 3 hours per workweek, and a maximum of 4 hours per workweek.

d. *Reading and grading essays and other substantive papers.*  Plaintiff and the Instructors conducted this type of work 2-4 times per workweek, with the minimum time spent on this work being 8 hours per workweek, an average of 10 hours per workweek, and a maximum of 12 hours per workweek.

e. *Providing preparation lessons to students.*   Plaintiff and the Instructors conducted this type of work 8-12 times per workweek, with the minimum time spent on this work being 4 hours per workweek, an average of 6 hours per workweek, and a maximum of 8 hours per workweek.

f. *Meeting with students before or after class.*   Plaintiff and the Instructors conducted this type of work 8-12 times per workweek, with the minimum time spent on this work being 2 hours per workweek, an average of 3 hours per workweek, and a maximum of 4 hours per workweek.

g. *Conducting and grading speaking evaluations.*   Plaintiff and the Instructors conducted this type of work 1 times per workweek, with the minimum time spent on this work being 4 hours per workweek, an average of 5 hours per workweek, and a maximum of 6 hours per workweek.

h. *Logging students' grades and participation.*  Plaintiff and the Instructors conducted this type of work 1 times per workweek, with the minimum time spent on this work being 1 hours per workweek, an average of 2 hours per workweek, and a maximum of 4 hours per workweek.

i. *Entering attendance.*  Plaintiff and the Instructors conducted this type work 1 times per workweek, with the minimum time spent on this being 1 hours per workweek, an average of 1 hours per workweek, and a maximum of 1 hours per workweek.

Indeed, Plaintiff's allegations unquestionably establish that his primary duties included "teaching, tutoring, instructing or lecturing in the activity of imparting knowledge[.]"  29 C.F.R. § 541.303(a).  Plaintiff's Complaint, furthermore, concedes ELS engaged him to "perform teaching and educational services[.]"  See D.E. No. 1, ¶ 22. Based upon the allegations in the Complaint alone, Plaintiff meets parts one (1) and (2) of the three (3) part test, which the plaintiffs in Fernandez and Volpe conceded.  See Fernandez, 858 F. 3d at 49 ("plaintiffs concede that their

primary duty while employed by defendants is teaching in order to impart knowledge, specifically, knowledge of the English language.").

Additionally, Plaintiff concedes in the Complaint that he possesses advanced degrees and teaching certificates.  Specifically, Plaintiff asserts that the "instructors hold various high-level degrees and certifications" necessary to teach the students.  D.E. No. 1, at ¶ 21.  Moreover, an exhibit to the Complaint shows Plaintiff holds a Bachelor of Arts in American Studies and German, a Master of Arts in English as a Second Language, and a TEFL [Teaching English as a Foreign Language] certificate.  (Id. at Exhibit 11).  By the very terms of the Complaint, therefore, parts one (1) and two (2) of the three (3) part test are easily satisfied.

> **2.**      **The Complaint Establishes That ELS Employed Plaintiff As A Teacher At An "Educational Establishment."**

As to the third element, ELS indisputably qualifies as an "educational establishment" within the meaning of the Department of Labor regulation.  29 C.F.R. § 541.204(b) provides, in relevant part, the following definition:

> The term 'educational establishment' means an elementary or secondary school system, an institution of higher education or other educational institution. . . . Factors relevant in determining whether post-secondary career programs are educational institutions include whether the school is licensed by a state agency responsible for the state's educational system **or accredited by a nationally recognized accrediting organization for career schools.**  Also, for purposes of the exemption, no distinction is drawn between public and private schools, or between those operated for profit and those that are not for profit.

(emphasis added). Indeed, the Fernandez and Volpe courts analyzed six (6) factors to determine whether private for-profit organizations qualified as educational establishment within the meaning of the regulation:

1.      the title held by the organization's employees;
2.      the certifications required of teachers;

3.     the formality of the courses;
4.     whether the organization grants certificates or degrees;
5.     the organization's charter; and
6.     the teacher's involvement in organizing, communicating, and delivering the curriculum.

See Fernandez v. Zoni Language Ctrs., Inc., 15cv6066, 2016 U.S. Dist. LEXIS 65310, *23-24 (S.D.N.Y., May 18, 2016); Volpe v. Am. Language Commun. Ctr., Inc., 200 F. Supp. 3d 428, 433 (S.D.N.Y. 2016).   Those courts indeed held that ESL schools qualified as educational establishments as the Court must in this matter as to Defendant.

### a.     Plaintiff Held The Title "Instructor."

29 C.F.R. § 541.303(a) provides that "'employed in a bona fide teaching capacity' […] means any employee with the primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge[.]"  29 C.F.R. § 541.303(b) further identifies exempt teachers to include, *inter alia*, "aircraft flight **instructors**" and "vocal or instrumental music **instructors**."  Id. (emphasis added). In Fernandez, the court explained the ESL school employed the plaintiff "as an English-language **instructor**[.]" Fernandez, 858 F. 3d at 47 (emphasis added); see also Escobedo v. Constr. Laboers' Educ. Training & Apprenticeship Fund of Minnesota & North Dakota, 2012 U.S. Dist. Lexis 146109, *7 (D. Min., Oct. 11, 2012) (the plaintiff "admits he was an "instructor.").

Plaintiff, in the Complaint, alleges ELS employed him and the putative collective as "instructors" with duties that included teaching students the English language.  See D.E. No. 1, ¶¶ 5, 9, and 22.  Accordingly, Plaintiff's title clearly indicates Defendant employed him at an educational institution.

### b.     Plaintiff Possesses Advanced Degrees And Certifications.

Plaintiff alleges that Defendant employs instructors that "hold various high-level degrees and certification to provide each student a 'personalized approach' to learning English as a second

language." <u>See</u> D.E. No. 1, ¶ 21. To that end, Plaintiff appended his credentials to the Complaint which include, among other qualifications, a master's degree in ESL from Hamline University, an undergraduate degree from the University of Minnesota, and continuing education in ESL-related courses. <u>Id.</u> at Ex. 11. Accordingly, as asserted by Plaintiff in Paragraph 21 of the Complaint, ELS employs instructors that possess "high level degrees and certifications" to work as an instructor.

### c.     <u>The Formality Of The Courses.</u>

Plaintiff's Complaint explains he developed the curriculum, led classroom instruction, created homework assignments, prepared quizzes, graded quizzes, met with students, conducted speaking evaluations, monitored attendance, logged student grades, etc. <u>See</u> D.E. No. 1, ¶¶ 5, 9, 27, 32, and 33. These allegations, taken as true, clearly establish ELS offered formal courses with in-class instruction, homework, and grades. <u>See</u> <u>Volpe</u>, 200 F. Supp. 3d at 434 ("These courses have quizzes and exams. Courts have viewed such 'school like formalities as strong evidence' that an organization is an 'educational institution.'") (citations omitted).

### d.     <u>Whether The Organization Grants Certificates Or Degrees.</u>

Plaintiff alleges that he administered quizzes, tests, speaking evaluations, and entered student grades onto ELS's systems. <u>See</u> D.E. No. 1, ¶ 33. Upon completion, students received grades and certificates of completion. <u>Id.</u>; <u>see</u> <u>also</u> English Programs and English Language Services: ELS, ELS, https://www.els.edu/english-programs (last visited Jun 16, 2020). Accordingly, Plaintiff's Complaint clearly establishes that ELS offers certificates for completion of courses.

### e.     <u>The Organization's Charter.</u>

Plaintiff alleges Defendant's mission revolves around providing English-language education to foreign students or to those who speak English as a second language:

> 13.     ELS provides educational services throughout this District and nationwide.
>
> […]
>
> 20.     ELS is a private entity that provides English language classes to international individuals who speak English as a second language. It operates through numerous language centers that are based on college campuses throughout the United States. ELS markets itself as providing language training to international students hoping to study in the United States, but further offers other programs to help other international individuals residing in the United States.

<u>See</u> D.E. No. 1; <u>see also</u> About Us: ELS, ELS, https://www.els.edu/about-us/ (last visited Jun 16, 2020). The allegations, therefore, establish ELS maintains a mission to provide English-language instruction.

### f.     <u>The Teacher's Involvement In Organizing, Communicating, And Delivering The Curriculum.</u>

As set forth above, Plaintiff's Complaint alleges he developed, organized, communicated, and delivered the curriculum directly to the students. <u>See</u> D.E. No. 1, ¶¶ 22, 25, 27, 32, and 33. Plaintiff, in fact, alleges that while ELS provided "broad skeletal structures for the course curriculum", it "relied and required Plaintiff and the Instructors to create the daily lessons and activities and apply them to the students." <u>Id.</u> at ¶ 25.

*    *    *    *    *

Analyzed in sum, the allegations in the Complaint conclusively establish that ELS employed Plaintiff and the putative collective at an "educational establishment." Specifically, the six (6) factors are easily satisfied based upon the factual claims in Plaintiff's Complaint and weigh heavily in favor of the Court finding that ELS qualifies as an educational establishment.

3.     **ELS Possesses Licensures And Certifications Held By Educational Establishments.**

Another factor in determining whether an organization is an educational institution includes "whether the school is licensed by a state agency responsible for the state's educational system **or** accredited by a nationally recognized accrediting organization for career schools." 29 C.F.R. § 541.204(b) (emphasis added);[2] see also Opinion Letter Fair Labor Stds. Act, FLSA2006-41 (Dep't of Labor Oct. 26, 2006) (finding "the career school qualifies as an educational establishment because it is accredited by the ACCSCT, a nationally recognized accrediting organization for career schools[.]"); see also Fernandez, supra at 50-51.

In Fernandez, the court – in holding that an ESL school qualified as an educational establishment – explained the accreditations serve as strong evidence that the instruction "is conducted by bona fide professionals." Id. at 51.  The court, in fact, remarked that the Accrediting Council for Continuing Education and Training – which, as discussed below, *accredited ELS* – is "one of ten institutions deemed 'Nationally Recognized Accrediting Agencies' by the United States Department of Education."  Id. at 47.  In Volpe, the court similarly held the defendant's licensure with the New York State Education Department and accreditation through the Commission on English Language Accreditation "are strong evidence that an organization is an 'educational institution.'"  Id. at 433 (citations omitted).

Here, the U.S. Immigration and Custom Enforcement agency certified ELS's centers in New Jersey and Minnesota as Student and Exchange Visitor Program schools (Exhibits 1 and 2 to the Zilovic Cert.).  These certifications can be authenticated by visiting the U.S. Department of Homeland Security's website.  See Study in the States, https://studyinthestates.dhs.gov/certified-

---

[2] ELS is exempt from state licensing requirements in New Jersey and Minnesota.  In fact, in all of the states where ELS operates, only New York, Oklahoma, Illinois, and California require licensure by a state agency.  ELS maintains valid licenses in these states.  See Certification of Alexandra Zilovic ("Zilovic Cert.") at ¶ 2.

school/7635; https://studyinthestates.dhs.gov/certified-school/7592 (last visited June 30, 2020). In order to be certified, the U.S. Immigration and Custom Enforcement agency requires an institution to be an ***accredited educational institution***. <u>Id.</u> Moreover, this certification by the U.S. Immigration and Custom Enforcement agency permits ELS to issue Form I-20s for student visas to international students. <u>Id.</u> Indeed, the ability to issue the I-20, i.e., the "Certificate of Eligibility for Nonimmigrant Student Status" firmly establishes Defendant qualifies as an educational institution recognized by the United States Immigration and Custom Enforcement agency.

In addition, ELS is and has been accredited by a nationally recognized accrediting organization. Since 1978, the ACCET has accredited ELS.[3] (<u>See</u> Exhibit 3 to the Zilovic Cert.). ELS's accreditation by the ACCET can easily be authenticated by visiting the U.S. Department of Education's online Database of Accredited Postsecondary Institutions and Programs. <u>See</u> ELS Language Centers, Database of Accredited Postsecondary Institutions and Programs, https://ope.ed.gov/dapip/#/institution-profile/199661 (last visited June 11, 2020).

The legitimacy of ELS's accreditation by ACCET is further enhanced by the <u>Fernandez</u> court's express acknowledgment of ACCET's stature in holding that an ESL organization qualified as an educational establishment. 858 F. 3d at 47. Indeed, ACCET has accredited ELS continuously since 1978. <u>See</u> Exhibit 3 to the Zilovic Cert.; <u>see also</u> ELS Language Centers, Database of Accredited Postsecondary Institutions and Programs, https://ope.ed.gov/dapip/#/institution-profile/199661 (last visited June 11, 2020). Therefore, in

---

[3] The Court may take judicial notice of the licensures and accreditations as matters of public record. <u>See</u> <u>Fed. R. Evid.</u> 201; <u>see also</u> <u>Hailey v. City of Camden</u>, 2014 U.S. Dist. LEXIS 137701, at *12 (D.N.J. Sep. 30, 2014) (taking judicial notice of "indisputably authentic matters of public record" that were "readily cognizable" in a Rule 12(b)(6) motion to dismiss); <u>Ferrante v. Amgen, Inc.</u>, 2014 U.S. Dist. LEXIS 34975, at *4 n.3 (D.N.J. Mar. 18, 2014) (considering a "public record" when ruling on a Rule 12(b)(6) motion to dismiss). In fact, many courts have taken judicial notice of an educational establishment's accreditation in support of the Teacher Exemption. <u>See</u> <u>e.g.</u>, <u>Fernandez v. Zoni Language Ctrs., Inc.</u>, 2016 U.S. Dist. LEXIS 65310, at *37 (S.D.N.Y. May 18, 2016) <u>aff'd</u>, 858 F.3d 45 (2d Cir. 2017).

light of the above, ELS clearly possesses the necessary accreditation to qualify as an educational establishment.

Since Plaintiff's allegations alone establish that ELS employed Plaintiff and the putative collective as teachers at educational establishments, the Court must dismiss Plaintiff's Complaint with prejudice in accordance with <u>Fernandez</u> and <u>Volpe</u>.  Put simply, Plaintiff's allegations establish that he and the putative collective are exempt professionals, not entitled to overtime compensation.

**B.      This Court Should Decline To Exercise Supplemental Jurisdiction Over The Remaining State Law Claims.**

The above analysis effectively disposes of Plaintiff's sole claim arising under federal law. Thus, the premise for this Court's subject matter jurisdiction is extinguished.   Under these circumstances, the Court may decline to exercise continuing pendent or supplemental jurisdiction over Plaintiff's remaining state law claims.

In general, absent exceptional circumstances, "jurisdiction [over claims based on state law] should be declined where the federal claims are no longer viable." <u>Shaffer v. Albert Gallatin Area Sch. Dist.</u>, 730 F.2d 910, 912 (3d Cir. 1984).  In fact, the Third Circuit "has made clear that, 'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court **must** decline to decide the pendant state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'" <u>Jacobowitz v. M & T Mortg. Corp.</u>, 372 F. App'x 225, 228-29 (3d Cir. 2010) (quoting <u>Borough of W. Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995)) (emphasis in original).  None of these considerations are present.  This matter has just commenced, without any discovery being exchanged or court-mandated conferences.   As such, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining claims.  See <u>Freund v. Florio</u>, 795 F. Supp.

702, 710 (D.N.J. 1992) ("[A]t this early stage in the litigation, dismissal of the pendent state claims in a federal forum will result in neither a waste of judicial resources nor prejudice to the parties."); Del Turco v. Randolph Twp. Police Dep't, 2020 U.S. Dist. LEXIS 37538, at *37-38 (D.N.J. Mar. 2, 2020) ("Where, on the other hand, the case is nowhere close to trial, remand is the proper course[.]").

Moreover, without the FLSA claim, Plaintiff sole remaining claims are for common law breach of contract (Second Cause of Action) and common law unjust enrichment (Third Cause of Action). Because these claims arise under state law, this Court should decline to exercise supplemental jurisdiction over them on this basis as well. See, e.g., Collins v. Cty. of Gloucester, 2009 U.S. Dist. LEXIS 61137, at *2 (D.N.J. July 17, 2009) (after the federal claims were dismissed, the court declined to keep exercising supplemental jurisdiction over remaining state law claims and observed "a state court, who by virtue of that judge's expertise and principles of comity is in a better position to decide the questions of state law raised by" the plaintiff's claims); Pedersen v. NCAA, 2015 U.S. Dist. LEXIS 159067, at *17 (D.N.J. Nov. 24, 2015) (declining to exercise supplemental jurisdiction over remaining state law contract claims).

In sum, once the federal law claim has been dismissed, the balance of factors usually "will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cahill, 484 U.S. 343, 349-50, n. 7 (1988). Therefore, this Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining claims arising out of state law.

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendant respectfully requests that this Court grant this motion and dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, New Jersey 07922
(908) 795-5200

By:   *s/James M. McDonnell*
James M. McDonnell
Joshua D. Allen

ATTORNEYS FOR DEFENDANT

Dated:  July 2, 2020

484758
4843-8166-8545, v. 1